**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| TARASENT, LLC, a Kansas limited liability company d/b/a Certus Advisory Partners,<br><br>Plaintiff,<br><br>v.<br><br>AELS ADMINISTRATIVE SERVICES, LLC, a Missouri limited liability company,<br><br>Defendant. | No. 4:20-cv-00388-NKL |

**ORDER**

Defendant AELS Administrative Services, LLC moves pursuant to Federal Rule of Civil Procedure 12(b)(7) to dismiss the complaint by plaintiff Tarasent, LLC d/b/a Certus Advisory Partners ("Certus") for failure to join a required party and on the ground that the Court lacks personal jurisdiction over the absent party, the Missouri Department of Natural Resources ("MDNR"). For the reasons discussed below, AELS's motion to dismiss is denied, but Certus is ordered to amend the complaint to add MDNR as a party.

**I. ALLEGATIONS**

In May 2002, Farmland Industries, Inc. and certain of its affiliates (collectively, the "Debtors") commenced Chapter 11 bankruptcy proceedings before the United States Bankruptcy Court for the Western District of Missouri (the "Bankruptcy Court"), Case No. 02-50557-JWV. The Debtors ultimately pursued liquidation, and pursuant to the Debtors' Second Amended and Restated Plan of Liquidation, as modified (the "Plan"), which the Bankruptcy Court confirmed on December 19, 2003, the FI Liquidating Trust (the "Liquidating Trust") was established and a Liquidating Trustee was designated.

1

As part of the Liquidating Trustee's efforts, a resolution was reached with MDNR respecting MDNR's regulatory enforcement order ("MDNR Order") pending against the Debtors. On April 30, 2004, the FI Missouri Remediation Trust (the "FIMR Trust") was created to resolve the Debtors' liability under the MDNR Order and to implement certain remedial measures undertaken in connection with the MDNR Order. At inception, the FIMR Trust Grantors were the Debtors and the Liquidating Trust; the FIMR Trust corpus was comprised of title to two "trust sites" and $5,509,808; the trustee was SELS Administrative Services, LLC (which later became AELS); and the beneficiaries were MDNR and the Liquidating Trust. Pursuant to the terms of the FIMR Trust Agreement, and on April 30, 2006, the Liquidating Trust contributed an additional $1,882,718, "to pay for the Trust's Administrative Expenses." In or about August 2005, one of the two "trust sites" was sold to a third-party, so that today the FIMR Trust corpus is comprised of, *inter alia*, a single real estate asset (the "Site"). In or about April 2009, Certus purchased the Liquidating Trust's residual beneficial interest in and to the FIMR Trust, and now stands in the shoes of the Liquidating Trust under the Trust Agreement as the Residual Beneficiary of the FIMR Trust.

In the wake of the May 2011 Joplin Tornado and resulting cleanup efforts, the United States Environmental Protection Agency, Region 7 (the "EPA"), unilaterally determined that the Site should be used as a repository for the disposal of mining waste and residential yard soils from the tornado zone and surrounding area. In order to so utilize the Site, the EPA and the Trustee entered into a series of access agreements starting with a June 12, 2013 Access Agreement and culminating with a March 8, 2016 Administrative Settlement and Order on Consent for Treatability Study (the "AOC"), which is currently in effect.

The Trustee (AELS) is required to make payments from the FIMR Trust Remediation Funds for all fees and expenses incurred for the purpose of implementing Environmental Actions (the actions required by the federal or state agency with regulatory oversight of compliance and remediation for the Site pursuant to the Remediation Plan for remediation and monitoring of the Site). The Trustee is precluded from making any payments from Administrative Funds for any purpose other than paying Administrative Expenses, and the term "Administrative Expenses" as defined by the FIMR Trust excludes all fees and expenses associated with Environmental Actions.

As of April 30, 2020, in response to MDNR Order No. MO-0053627 and the AOC, the FIMR Trust has expended $7,276,735 (collectively the "Site Response Costs"). The Trustee reports that a total of $5,721,043 in Site Response Costs have been allocated to Environmental Actions and thus are chargeable to Remediation Funds, and that a total of $1,555,692 in Site Response Costs have been allocated as Administrative Expenses chargeable to Administration Funds. The Trustee reports that, as of April 30, 2020, the FIMR Trust accordingly maintained a total of $1,224,375 denominated as Remediation Funds and a total of $1,075,243 denominated as Administrative Funds.

In the First Cause of Action, Certus seeks (1) a "declaration that the Trustee is authorized to sell the Site in the absence of a No Further Action Letter or a Permission Letter from MDNR, so long as the buyer agrees to assume all of the environmental liabilities associated [with] the Site" and (2) "a declaration that all expenses, fees and costs in any way associated with Environmental Actions are solely allocable to the FIMR Trust's Remediation Funds and may not be allocated to the FIMR Trust's Administrative Funds." Doc. 1, p. 14. Certus alleges that the Trustee paid fees and expenses associated with Environmental Actions from Administrative Funds in violation of

3

the Trust Agreement. *Id.*, ¶ 42. In the Second Cause of Action, Certus alleges breach of trust by AELS and seeks a "comprehensive accounting" and injunctive relief as follows:

> a) compelling the Trustee to perform its duties consistent with Missouri law and the [FIMR Trust];
>
> b) enjoining the Trustee from committing any further breach of trust relative to its administration, management and oversight of the [FIMR Trust]; and
>
> c) compelling the Trustee to redress the breaches of trust by paying money, restoring property, or other means.

*Id.*, p. 15.

## II. STANDARD

Federal Rule of Civil Procedure 12(b)(7) requires the dismissal of a complaint for "failure to join a party under Rule 19." Federal Rule of Civil Procedure 19, in relevant part, provides:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). "If the person is not necessary, then the case must go forward without him and there is no need to make a Rule 19(b) inquiry." *Gwartz v. Jefferson Mem'l Hosp. Ass'n*, 23 F.3d 1426, 1428 (8th Cir. 1994).[1] If, on the other hand, the absent person is required, then the Court must order that the person be added as a party. Fed. R. Civ. P. 19(a)(2). However, "[i]f a

---

[1] Rule 19(a) now uses the term "required" instead of "necessary," but the concepts are the same. *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 859 (2008) (noting that "required parties" were called "'necessary' parties under the old terminology").

person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).

## III. DISCUSSION

### a. Whether MDNR Is a Required Party

AELS argues that, as the primary beneficiary of the FIMR Trust, MDNR is a required party. AELS insists that, by this action, Certus "seeks to compel AELS to sell the corpus of" the FIMR Trust and "additionally alleges mismanagement" of the FIMR Trust. According to AELS, MDNR is a required party because it has an interest in any litigation regarding the disposition of FIMR Trust property or management of the FIMR Trust, and MDNR's not being joined will impair or impede MDNR's ability to protect its interest and may subject AELS to a substantial risk of incurring double or otherwise inconsistent obligations with respect to any challenged sale or distribution.

Certus responds that the complaint does not seek (1) removal of the Trustee, (2) termination of the FIMR Trust, (3) to attack, distribute or invade the FIMR Trust corpus, or (4) to alter, compromise, or impact the rights or beneficial interests of MDNR as beneficiary of the FIMR Trust. Certus argues that MDNR's joinder would not add anything to the Court's judgment respecting the interpretation of the Trust Agreement governing the administration of the FIMR Trust (which is an instrumentality of the United States Bankruptcy Court for the Western District of Missouri). Certus also notes that it nonetheless provided notice of Plaintiff's complaint to MDNR on June 8, 2020 by electronic and certified mail.

Certus has asserted two causes of action. First, Certus seeks a "declaration that the Trustee is authorized to sell the Site in the absence of a No Further Action Letter or a Permission Letter

5

from MDNR, so long as the buyer agrees to assume all of the environmental liabilities associated the Site" and "a declaration that all expenses, fees and costs in any way associated with Environmental Actions are solely allocable to the FIMR Trust's Remediation Funds and may not be allocated to the FIMR Trust's Administrative Funds." Second, Certus seeks a "comprehensive accounting" as well as injunctive relief a) compelling the Trustee to perform its duties consistent with Missouri law and the FIMR Trust; b) enjoining the Trustee from committing any further breach of trust relative to its administration, management and oversight of the FIMR Trust; and c) compelling the Trustee to redress the breaches of trust by paying money, restoring property, or other means.

The declarations that Certus requests aim to change the status quo with respect to the Site and allocation of fees—trust property—and therefore implicate MDNR's interests. Similarly, Certus's requests for a "comprehensive accounting" and injunctive relief implicate MDNR's interests in the trust property. Courts applying Missouri law have routinely held that beneficiaries are necessary parties in actions seeking an accounting or affecting the trust corpus because of their interest in that corpus. *See Roth v. Lehmann*, 741 S.W.2d 860, 862 (Mo. Ct. App. 1987) (holding that beneficiaries are necessary parties in suit seeking final accounting because "[e]ach beneficiary has an interest in that accounting, and in challenging it"); *Lynch v. Porter*, 446 F.2d 225, 227 n. 4 (8th Cir. 1971) ("All beneficiaries are normally deemed indispensable parties to an equitable suit seeking restoration of the res."); *Pauli v. Spicer*, No. ED 101231, 2014 WL 5139384, at *7 (Mo. Ct. App. Oct. 14, 2014) (holding that trustees and beneficiaries are necessary and indispensable parties in actions involving trust property);[2] *see also Brown-Thill v. Brown*, 929 F. Supp. 2d 887,

---

[2] Although whether joinder is required is a federal procedural question, the Court looks to state law, which governs the Trust Agreement (*see* Doc. 1-1, Section 13.5), to evaluate MDNR's interest. *See Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 125 n.22 (1968)

898–900 (W.D. Mo. 2013) (noting that, in various cases deciding the issue under Missouri law, "the beneficiaries were necessary parties because an accounting was involved [or] the trust itself would somehow be affected by the judgment"), *aff'd as modified*, 762 F.3d 814 (8th Cir. 2014). Certus's claims, which seek both an accounting and actions affecting the res, thus render MDNR a required party. MDNR indisputably has an interest in the trust property, and in MDNR's absence, the Court's rulings might "as a practical matter impair or impede [MDNR]'s ability to protect the interest" or "leave [AELS] subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations . . . ." Fed. R. Civ. P. 19(a)(1)(B).

Certus argues that, because MDNR has not attempted to intervene in this action despite having notice of it, it has not "claim[ed] an interest" within the meaning of Rule 19(a)(1)(B). However, courts interpret "person claim[ing] an interest relating to the subject of the action" as a person *having* an interest in the subject of the action. *See Ridgway v. Bank of Am., N.A.*, No. 13 CV 289 RWS, 2013 WL 3724818, at *3 (E.D. Mo. July 16, 2013) ("Because Ridgway's children . . . have an interest in the subject of this action, and it is not altogether clear that their interests will be adequately represented by those already party to the action, they are necessary parties to this action."). Thus, MDNR's not having actively sought to participate in this litigation to date is not an indication that it claims no interest in the subject of this action.

### b. Joinder of MDNR

Rule 19(a) requires the Court to order that a required person who has not been joined be made a party. Fed. R. Civ. P. 19(a)(2). Only "[i]f a person who is required to be joined if feasible

---

("[I]t has been clear that in a diversity case the question of joinder is one of federal law. To be sure, state-law questions may arise in determining what interest the outsider actually has, but the ultimate question whether, given those state[-]defined interests, a federal court may proceed without the outsider is a federal matter.") (citations omitted).

cannot be joined" must the court determine "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).

Here, AELS argues that MDNR cannot feasibly be joined because, as a state agency, it is entitled to Eleventh Amendment immunity to suit. Indeed, the Eighth Circuit has expressly held that "the Eleventh Amendment bars involuntary joinder of MDNR." *Thomas v. FAG Bearings Corp.*, 50 F.3d 502, 505 (8th Cir. 1995). However, missing from this case is any indication that MDNR intends to assert, and whether MDNR is entitled to assert, Eleventh Amendment immunity. In *Thomas*, MDNR affirmatively "objected to joinder on several grounds, including Eleventh Amendment immunity." *Id.* at 504. Here, in contrast, MDNR has not indicated in any fashion that it is unwilling to participate in this action. Moreover, Certus suggests in a footnote that MDNR "unequivocally" and expressly waived Eleventh Amendment immunity in assenting to the terms of the FIMR Trust. Thus, even if MDNR would object to participating in this action, there may be a question as to whether MDNR has waived immunity under the Eleventh Amendment.

Without an objection from MDNR to participating in this litigation, and if appropriate, consideration of arguments from the relevant parties as to whether Eleventh Amendment immunity has been waived, ruling that MDNR cannot feasibly be joined because of Eleventh Amendment immunity would be premature. *See Ranger Transp., Inc. v. Wal-Mart Stores*, 903 F.2d 1185, 1187 (8th Cir. 1990) (noting, in affirming district court's denial of motion to dismiss for failure to join indispensable party, that "the proper procedure under Rule 19(a) is to give the parties an opportunity to bring in such a party, not to dismiss the action"); *Diagnostic Unit Inmate Council v. Motion Picture Ass'n of Am., Inc.*, 953 F.2d 376, 378 (8th Cir. 1992) (noting that Rule 19(a) "provides that if [a necessary] person has not been so joined, the court shall order that the person be made a party"); *Warner v. First Nat. Bank of Minneapolis*, 236 F.2d 853, 858 (8th Cir. 1956)
8

("Ordinarily, dismissal should not be ordered for failure to join an indispensable party, but an opportunity should be afforded to bring in such party."); *Sladek v. Bell Sys. Mgmt. Pension Plan*, 880 F.2d 972, 980 (7th Cir. 1989) (stating that "dismissal *with prejudice* should ordinarily result only after the court has ordered the party joined and the plaintiff has failed to do so"); *see also Fort Yates Pub. Sch. Dist. No. 4 v. Murphy*, 786 F.3d 662, 671 (8th Cir. 2015) (noting that "courts are generally 'reluctant to grant motions to dismiss'" pursuant to Rule 12(b)(7)).

## IV.   CONCLUSION

For the reasons discussed above, AELS's motion to dismiss is DENIED on the ground that dismissal of the action for failure to add a required party is premature. However, because MDNR is a required party, Certus hereby is ORDERED to amend its complaint within two weeks of the date of this Order to add MDNR as a party. Failure to so amend the complaint will result in dismissal of the action without prejudice.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated:  September 14, 2020
Jefferson City, Missouri